Citation Nr: 1450468 
Decision Date: 11/14/14 Archive Date: 11/26/14

DOCKET NO. 10-22 748 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an effective date earlier than July 17, 2007, for the grant of special monthly compensation (SMC) based on a need for aid and attendance. 

2. Entitlement to an increase in the 60 percent evaluation currently assigned for lumbar strain with intervertebral disc syndrome. 

3. Entitlement to an evaluation in excess of 60 percent for neurogenic colon with bowel dysfunction, from the initial grant of service connection. 

4. Entitlement to an evaluation in excess of 20 percent for right upper extremity subscapular nerve disability, from the initial grant of service connection. 

5. Entitlement to an evaluation in excess of 20 percent for left upper extremity subscapular nerve disability, from the initial grant of service connection. 

6. Entitlement to an evaluation in excess of 10 percent for right lower extremity sciatic peripheral neuropathy, from the initial grant of service connection. 

7. Entitlement to an evaluation in excess of 10 percent for left foot strain with sciatic peripheral neuropathy, from the initial grant of service connection. 


REPRESENTATION

Appellant represented by: Paralyzed Veterans of America, Inc.


ATTORNEY FOR THE BOARD

Christopher Maynard, Counsel

INTRODUCTION

The Veteran had active service from July 1973 to July 1993. 

By rating actions in July 1998, September 1999 and March 2003, the RO denied the Veteran's claims of SMC based on the need for aid and attendance (A&A) or at the housebound rate. The Veteran and his representative were notified of these decisions and did not appeal. 

This matter comes before the Board of Veterans Affairs (Board) on appeal from RO decisions in August 2004, June 2008 and November 2011. In August 2004, the RO, in part, assigned an increased rating to 60 percent for the Veteran's lumbosacral spine disability; effective from May 23, 2003. In June 2008, the RO implemented a May 2008 Board decision that granted SMC based on a need for A&A, and assigned an effective date of July 17, 2007. In November 2011, the RO, in pertinent part, granted service connection for neurological impairment of both upper and lower extremities and neurogenic colon, and assigned the ratings currently shown on the first page of this decision. 

Finally, the Board notes that by rating action in January 2013, the RO assigned an increased rating to 100 percent for Meniere's disease; effective from January 9, 1998, the date of receipt of the Veteran's original claim for symptoms of vertigo, tinnitus and hearing loss, claimed as labyrinthitis. The RO then issued an SOC and advised the Veteran that this was a complete grant of the benefits sought. Although the Veteran subsequently submitted a VA Form 9, in which he discussed several of his disabilities, including Meniere's disease, a higher evaluation for Meniere's disease is not possible. Accordingly, the issue of an increased rating for Meniere's disease is moot, and the matter will not be addressed in this decision. 


FINDINGS OF FACT

1. The Veteran did not appeal the March 2003 rating decision which, in part, denied entitlement to SMC based on a need for aid and attendance. 

2. A formal claim for SMC based on a need for aid and attendance was received in April 2003. 

3. By rating action in June 2008, the RO assigned an effective date of July 17, 2007, for the grant of SMC based on a need for aid and attendance. 

4. The earliest effective date for the grant of SMC based on a need for aid and attendance is July 17, 2007. 

5. The Veteran's low back disability is manifested principally by pain, limitation of motion and incapacitating episodes of at least six weeks during the past 12 months; functional loss of use due to pain or during flare-ups to a degree commensurate with unfavorable ankylosis of the entire spine is not demonstrated. 

6. Since service connection was established, the Veteran has not been shown to have complete loss of sphincter control. 

7. Since service connection was established, the Veteran 's right and left upper extremity disabilities have been manifested by chronic pain and numbness; more than mild symptoms of incomplete paralysis of the upper radicular group is not demonstrated. 

8. Since service connection was established, the Veteran's peripheral neuropathy of the right and left lower extremity has been manifested by symptoms most compatible with mild incomplete paralysis of the sciatic nerve, and no greater. 


CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than July 17, 2007, for the grant of SMC based on a need for aid and attendance have not been met. 38 U.S.C.A. §§ 1155, 5103A, 5107, 5110 (West 2002); 38 C.F.R. §§ 3.1(p),(r), 3.157, 3.159, 3.350(b)(3), 3.351(b),(c), 3.400(o)(2) (2014); Dalton v. Nicholson, 21 Vet. App. 23 (2007). 

2. The criteria for an evaluation in excess of 60 percent for lumbar strain with intervertebral disc syndrome are not met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Part 4, Diagnostic Codes 5243 (prior to and from 9/26/03). 

3. The criteria for an initial evaluation in excess of 60 percent for neurogenic colon are not met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.10, 4.114, Part 4, Diagnostic Code 7332 (2014). 

4. The criteria for an initial evaluation in excess of 20 percent for left upper extremity subscapular nerve disability are not met. 38 U.S.C.A. §§ 1155, 5103A, 5106, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.124a, Part 4, Diagnostic Code 8510 (2014). 

5. The criteria for an initial evaluation in excess of 20 percent for right upper extremity subscapular nerve disability are not met. 38 U.S.C.A. §§ 1155, 5103A, 5106, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.124a, Part 4, Diagnostic Code 8510 (2014). 

6. The criteria for an initial evaluation in excess of 10 percent for peripheral neuropathy of the right lower extremity are not met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.3, 4.7, 4.124a, Diagnostic Code 8520 (2014). 

7. The criteria for an initial evaluation in excess of 10 percent for peripheral neuropathy of the left lower extremity are not met. 38 U.S.C.A. §§ 1155, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.159, 4.1, 4.2, 4.3, 4.7, 4.124a, Diagnostic Code 8520 (2014). 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VCAA

Before addressing the merits of the Veteran's claim, the Board is required to ensure that the VA's "duty to notify" and "duty to assist" obligations have been satisfied. See 38 U.S.C.A. §§ 5103, 5103A (West 2002); 38 C.F.R. § 3.159 (2014). 

Under the Veterans Claims Assistance Act (VCAA), when VA receives a complete or substantially complete application for benefits, it must notify the claimant of the information and evidence not of record that is necessary to substantiate a claim, which information and evidence VA will obtain, and which information and evidence the claimant is expected to provide. 38 C.F.R. § 3.159. This must include notice that a disability rating and an effective date for the award of benefits will be assigned if there is a favorable disposition of the claim. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006); 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107; 38 C.F.R. §§ 3.159, 3.326. 

The notification obligation in this case was accomplished by way of letters from the RO to the Veteran dated in April 2003 (A&A), June 2003 (low back) and December 2010 (remaining issues). See Quartuccio v. Principi, 16 Vet. App. 183 (2002); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F. 3d 1328 (Fed. Cir. 2006). Furthermore, no argument has been advanced that there exists any error in the accomplishment of the duty to notify. 

As to VA's duty to assist, the Board finds that all necessary development has been accomplished and that appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's service treatment records (STRs), and all VA and private medical records have been obtained and associated with the claims file. The Veteran was examined by VA during the pendency of this appeal, and was afforded an opportunity for a personal hearing, but declined. The Board also reviewed the Veteran's Virtual VA records. The Board finds that the VA examinations were comprehensive in nature and adequate upon which to base a decision on the merits of the issues addressed in this decision. The examiners personally interviewed and examined the Veteran, elicited a medical history and provided a rational explanation for the conclusions reached. 

At this point, it is noted that while the Veteran's representative asserted that if the Board does not find that increased ratings are warranted, it should remand the issues "to ensure the VA associates all treatment records with the claims file and provides the veteran with a contemporaneous examination." In this regard, the Board notes that the representative does not assert that the Veteran's disabilities have worsened since the most recent VA examinations were conducted or that there are missing VA treatment records. In this case, the most recent VA examinations were conducted in 2012 and 2013 and the most recent VA outpatient reports of record are from May 2013. As indicated above, the VA examinations were comprehensive in scope and provided sufficient information and findings to address the rating criteria for the disabilities on appeal. Accordingly, the Board finds that the evidence of record is sufficient to adjudicate the claims, and that no useful purpose or benefit flowing to the Veteran would be served by remanding the claims for additional examinations. 

Further, neither the Veteran nor his representative have made the RO or the Board aware of any additional available evidence that needs to be obtained in order to fairly decide this appeal, and has not argued that any error or deficiency in the accomplishment of the duty to notify and duty to assist has prejudiced him in the adjudication of his appeal. See Shinseki v. Sanders, 129 S.Ct.1696 (2009). 

Based on a review of the claims file, the Board finds that there is no indication in the record that any additional evidence relevant to the issues to be decided herein is available but not yet part of the claims file. Accordingly, the Board finds that the duty to notify and duty to assist have been satisfied. 

Effective Dates - Applicable Law and Regulations

The provisions governing the assignment of the effective date of an increased rating are set forth in 38 U.S.C.A. § 5110(a) and (b)(2), and 38 C.F.R. § 3.400(o). A claim for a SMC is a claim for an increased rating. Dalton v. Nicholson, 21 Vet. App. 23, 31-32 (2007); see also Hurd v. West, 13 Vet. App. 449, 451-52 (2000); Norris v. West, 12 Vet. App. 413, 420 (1999). 

The general rule with respect to effective date of an award of increased compensation is that the effective date of award "shall not be earlier than the date of receipt of the application thereof." 38 U.S.C.A. § 5110(a). This statutory provision is implemented by regulation that provides that the effective date for an award of increased compensation will be the date of receipt of claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400(o)(1). 

An exception to that rule regarding increased ratings applies, however, under circumstances where the evidence demonstrates that a factually ascertainable increase in disability occurred within the one-year period preceding the date of receipt of a claim for increased compensation. If an increase in disability occurred within one-year prior to the claim, the increase is effective as of the date the increase was "factually ascertainable." If the increase occurred more than one year prior to the claim, the increase is effective the date of claim. If the increase occurred after the date of claim, the effective date is the date of increase. 38 U.S.C.A. 5110(b)(2); Dalton v. Nicholson, 21 Vet. App. at 31-32; Harper v. Brown, 10 Vet. App. 125 (1997); 38 C.F.R. § 3.400 (o)(1)(2); VAOPGCPREC 12-98 (1998). 

A veteran shall be considered to be in need of a regular A&A if he or she has the anatomical loss or loss of use of both feet, one hand and one foot, or is so helpless or blind or permanently bedridden as to need or require the regular aid and attendance of another person. 38 U.S.C.A. § 1114(l); 38 C.F.R. § 3.350(b). 

In determining whether a veteran is helpless or nearly so helpless as to require the regular A&A of another person, the following circumstances will be considered: Inability of the veteran to dress or undress himself, or to keep himself ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid (this will not include the adjustment of appliances which normal persons would be unable to adjust without aid, such as supports, belts, lacing at the back, etc.); inability of the veteran to feed himself through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the veteran from hazards or dangers incident to his daily environment. 38 C.F.R. § 3.352(a). 

Determinations that the veteran is so helpless, as to be in need of regular aid and attendance will not be based solely upon an opinion that the veteran's condition is such as would require him to be in bed. They must be based on the actual requirement of personal assistance from others. 38 C.F.R. § 3.352(a). 

It is not required that all of the disabling conditions enumerated in 38 C.F.R. § 3.352(a) be found to exist before a favorable decision is permissible. Particular personal functions which the veteran is unable to perform should be considered in connection with his condition as a whole. It is only necessary that the evidence establish that he is so helpless as to need regular aid and attendance, not that there is a constant need. 38 C.F.R. § 3.352(a); Turco v. Brown, 9 Vet. App. 222 (1996). However, it is logical to infer a threshold requirement that "at least one of the enumerated factors be present." Turco, 9 Vet. App. at 224. "Bedridden" will be that condition which, by virtue of its essential character, actually requires that the claimant remain in bed. The fact that a claimant has voluntarily taken to bed or that a doctor has prescribed rest in bed for a greater or lesser part of the day to promote convalescence or cure is insufficient. 38 C.F.R. § 3.352(a). 

A&A

As noted above, the Veteran's claim for SMC based on a need for regular aid and attendance (A&A) was granted by the Board in May 2008. By rating action in June 2008, the RO implemented the Board decision and assigned an effective date of July 17, 2007 for the grant of A&A. The Veteran disagreed with the effective date assigned and asserted that he needed assistance to perform most of the routine functions of daily care due to his service-connected disabilities. The Veteran asserted that his wife has had to help him dress/undress, bath, feed him and drive him to his appointments for several years, and believes that the effective date of his award for A&A should be from the date of his initial claim in 1998. 

Initially, it should be noted that the Veteran did not perfect an appeal to the March 2003 rating decision that denied entitlement to A&A. As an appeal was not perfected within the prescribed period under 38 C.F.R. § 20.1103, that determination is final. See also 38 C.F.R. § 20.302. Given the finality of the March 2003 rating decision the earliest effective date for the grant of A&A can be no earlier than the first time that the post-March 2003 record shows a claim and/or entitlement to A&A. 

In this case, a new claim for A&A was received from the Veteran in April 2003. The RO denied the claim in August 2004, and the Veteran perfected a timely appeal. In May 2008, the Board granted entitlement to A&A. By rating action in June 2008, the RO assigned an effective date of July 17, 2007. The Veteran disagreed with effective date assigned, giving rise to this appeal. 

Initially, it should be noted that the Board has reviewed all the evidence of record, including statements from the Veteran and his wife, and the numerous VA and private medical reports and VA examinations from 2000 to the present. 

The provisions of the law governing effective date of awards of benefits are clear and unambiguous. Generally, the effective date of an award of increased compensation (which includes claims for A&A) shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of the claim. 38 U.S.C.A. § 5110(a). 

The law provides one exception to this general rule governing increased rating claims. If the evidence shows that the increase in disability occurred prior to the date of receipt of claim, the RO may assign the earliest date as of which it is factually ascertainable that the increase occurred as long as the claim for the increased disability rating was received within one year of the date that the increase occurred. 38 U.S.C.A. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2); see Harper v. Brown, 10 Vet. App. 125 (1997); see also VAOPGCPREC 12-98 (Sept. 23, 1998). 

In addition, the Court has indicated that it is axiomatic that the fact that must be found in order for entitlement to an increase in disability compensation to arise is that the service-connected disability has increased in severity to a degree warranting an increase in compensation. See Hazan v. Gober, 10 Vet. App. 511, 519 (1992) (noting that, under section 5110(b)(2), "the only cognizable 'increase' for this purpose is one to the next disability level" provided by law for the particular disability). Thus, determining whether an effective date assigned for an increased rating is correct or proper under the law requires (1) a determination of the date of the receipt of the claim for the increased rating as well as (2) a review of all the evidence of record to determine when an increase in disability was "ascertainable." Hazan, 10 Vet. App. at 521. 

In this case, the RO assigned an effective date of July 17, 2007, the date of a letter from the Veteran's wife indicating that the Veteran was in need of regular A&A. In this regard, the Board notes that while the Veteran's wife reported that she has had to help the Veteran with his routine daily functions, such as dressing, feeding and making sure he takes his medications, the question is not whether she assists her husband in his daily activities, but whether the Veteran was so helpless as to need or require the regular aid and attendance of another person. 38 C.F.R. § 3.350(b). 

The Board does not dispute that the Veteran's service-connected disabilities are significantly disabling and cause considerable functional impairment in his daily activities. The evidence showed that the Veteran was given a wheelchair by VA in 1999, upgraded to a motorized wheelchair in 2010, and that he uses it when outside of his home. However, (prior to July 2007), the evidence showed that the Veteran ambulates around his home using a cane and was able to perform daily self-care without assistance. The evidence showed that the Veteran was seen at a VA emergency room for heart problems in October 2002, and that he left the ER unaccompanied and ambulatory using his walking cane. The report also noted that the Veteran had been active the day before cutting his lawn using his riding mower. A VA outpatient note, dated in February 2004, noted that the Veteran was able to walk 100 feet using a cane, that he had full passive range of motion and power in all extremities, was able to heel-toe walk and had good coordination. His gait, stance, muscle tone and bulk were normal, and his reflexes were symmetrical and of normal amplitude. While the Veteran could not touch his toes on forward bending and had positive straight leg raising, the evidence showed that he had good coordination and function in all of his extremities. Similar findings were reported on a VA outpatient note in December 2004. At that time, the Veteran reported that he drives his car occasionally. 

When examined by VA in March 2004, the Veteran reported that he participated in water aerobics two to three times a week - his pain permitting. In fact, VA outpatient notes in October 2006 and March and June 2007, showed that the Veteran participated in a regular exercise program. In October 2006, the Veteran reported that the exercise program was beneficial, and the examiner commented that the Veteran was able to perform daily self-care in spite of his pain. A March 2007 VA outpatient note showed that the Veteran was encouraged to walk more, and that he was exercising in a pool three times a week. A June 2007 VA outpatient note indicated that the Veteran had lost 25 pounds over three months from his exercise program. 

The Veteran was afforded a VA A&A examination in November 2005. The examiner indicated that the claims file was reviewed and included a description of the Veteran's complaints, medical history and the findings on examination. The Veteran was accompanied by his wife to the examination, but reported that he still drives some. The Veteran reported that he can dress himself, except for shoes and socks, can feed himself and does his own toileting. He goes to church usually every Sunday, and gets out of the house for appointments. The Veteran reported that he gets around his home with aid of a cane and that he uses a motorized wheelchair outside of his home. On examination, the Veteran was well developed and had marked pain in his neck and back with any movement, dizziness, poor balance and vertigo. The examiner indicated that the Veteran had no restrictions on use of his upper and lower extremities, and that he could protect himself from the hazards of his daily environment. 

On VA neurological examination in November 2005, motor power and muscle tone and bulk were normal in all four extremities. There was no pronator drift and the Veteran was able to heel and toe walk. The examiner indicated that the Veteran's stance and gait were normal and he could walk with aid of a crutch, but that he stays in his wheelchair. The Veteran had joint pains and limitation of lumbar flexion, but reflexes were brisk in all four extremities. There was no asymmetry, involuntary movements or muscle atrophy. The Veteran had weakness in all extremities, but the examiner commented that volition was questionable. Coordination was intact to finger nose testing, and sensory testing was inconsistent with any known anatomical distribution pattern. 

On VA psychiatric evaluation in November 2005, there were no loosened associations or flight of ideas, no bizarre motor movements or tics, and no impairment of thought processes or communication. The Veteran was well oriented, his memory was intact, and his insight and judgment was adequate. The assessment was adjustment disorder with mixed emotional features, secondary to multiple physical complaints. The Global Assessment of Functioning (GAF) score was 57, and the examiner indicated that the Veteran was capable of managing his own financial affairs. 

Although the Veteran contends that his award of regular A&A should be made effective from the date of his initial claim in 1998, the date of filing of a claim is controlling in determinations as to effective dates. See Lalonde v. West, 12 Vet. App. 377, 380 (1999) (citing Hazan v. Gober, 10 Vet. App. 511 (1997)). In Lalonde, the Court stated that the effective date of an award of service connection is not based upon the date of the earliest medical evidence demonstrating potential entitlement, but on the date that the application upon which service connection (here, A&A) was eventually awarded was filed with VA. Id. 

As noted above, in order to meet the regulatory criteria for A&A, the evidence must demonstrate that the Veteran is so helpless as to need or require the regular aid and attendance of another person. 38 C.F.R. § 3.350(b). It is not required that all of the factors enumerated in 38 C.F.R. § 3.352(a) be found to exist. The particular personal function which the veteran is unable to perform should be considered in connection with his condition as a whole. Moreover, the evidence must establish that the veteran is so helpless as to need regular A&A, not that there is a constant need for A&A. 38 C.F.R. § 3.352(a); see VAOPGCPREC 21-94. 

After review of all the evidence of record, the Board finds that there is no earlier date prior to July 17, 2007, on which it could be factually ascertained that the Veteran was in need of regular A&A. 38 C.F.R. § 3.400(o)(2). As discussed above, the evidence showed that while the Veteran has significant service-connected disabilities that clearly impact on his ability to ambulate, the medical reports of record showed that prior to July 17, 2007, the Veteran had good strength and dexterity in his upper extremities, could stand and walk up to 100 feet with use of a cane and was able to perform the functions of daily self-care, albeit with pain. The only aspect of daily self-care that the Veteran reported that he needed assistance with, was putting on his socks and shoes. 

As to his wife's assertion that she did not let the Veteran cook his own meals because he almost burned the house down several times, (see January 2006 statement), there is no objective or competent medical evidence to suggest that the claimed fire incidents were due to or caused by his service-connected disabilities. That is, the evidence of record shows that the Veteran has good strength and dexterity in his upper extremities and is able to ambulate around his house with a cane. As the Veteran's wife never offered any explanation as to the actual cause of the alleged fires, there is no reason to believe that any such incidents were related to any impairment associated with the Veteran's service-connected disabilities. In fact, the Board notes that subsequent to the grant of A&A, the record showed that the Veteran has continued to stay physically active. When seen by VA for his annual mental health evaluation in February 2010, the Veteran reported that he was very involved in his church and that he assisted with caring for his seven grandchildren. He also reported that he enjoys fishing, boating and other outdoor activities - weather permitting, and said that he considered himself to be "active." The therapist opined that the Veteran was independent in all activities of daily living. The record also showed that the Veteran drives his truck with a lift for his scooter and that he participates in pool therapy three times a week and uses a treadmill/bike at home. With the medical evidence described above contradicting the wife's assertion concerning the Veteran's physical limitations, its probative value is diminished even further. In view of the evidence set out above, the Board finds no basis for the assignment of an effective date earlier than July 17, 2007. Accordingly, the appeal is denied. 

Finally, as to the representative's argument that an earlier effective date is warranted because the Board, in granting SMC, considered evidence from 2003, the question as to the appropriate effective date turns not the date of the earliest evidence considered, but the date that the evidence showed the Veteran is so helpless as to need regular A&A was "factually ascertainable." For the reasons discussed above, the Board finds that the evidence in this case does not show that the Veteran was in need of A&A prior to July 17, 2007. 

Increased Ratings - In General

In general, when an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). When the appeal arises from an initial assigned rating, consideration must be given to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999). However, staged ratings are also appropriate in any increased-rating claim in which distinct time periods with different ratable symptoms can be identified. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4. The percentage ratings in VA's Schedule for Rating Disabilities (Schedule) represent as far as can practicably be determined the average impairment in earning capacity resulting from such disabilities and their residual conditions in civil occupations. 38 C.F.R. § 4.1 (2014). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective enervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. 38 C.F.R. §§ 4.10, 4.40, 4.45. The Court has held that the RO must analyze the evidence of pain, weakened movement, excess fatigability, or incoordination and determine the level of associated functional loss in light of 38 C.F.R. § 4.40, which requires the VA to regard as "seriously disabled" any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions of 38 C.F.R. § 4.14 (avoidance of pyramiding) did not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including during flare-ups. The Board noted that the guidance provided by the Court in DeLuca must be followed in adjudicating claims where a rating under the diagnostic codes governing limitation of motion should be considered. 


Low Back Disability

Initially, it should be noted that during the pendency of this appeal, the rating criteria for evaluating disabilities of the spine were amended. In general, where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial process has been concluded, VA must consider both versions and apply the one most favorable to the veteran. VAOPGCPREC 7-2003 (November 19, 2003). VA's Office of General Counsel has determined that the amended rating criteria, if favorable to the claim, can be applied only for periods from and after the effective date of the regulatory change. However, the Veteran does get the benefit of having both the old regulation and the new regulation considered for the period after the change was made. See VAOPGCPREC 3-00. That guidance is consistent with longstanding statutory law, to the effect that an increase in benefits cannot be awarded earlier than the effective date of the change in law pursuant to which the award is made. See 38 U.S.C.A. § 5110(g) (West 2002). 

In this case, the Veteran was rated 40 percent disabling for lumbosacral strain at the time of receipt of his claim for increase in May 2003, which was the highest evaluation possible under Diagnostic Code (DC) 5295. However, the Veteran has now been shown to have disc disease of the lumbosacral spine which can not be disassociated from the service-connected low back strain. Thus, the Board must also consider the rating criteria for intervertebral disc syndrome (IVD) under DC 5243. 

The rating criteria under DC 5243, in effect at the time of receipt of the Veteran's claim for increase in May 2003, provided that IVD was to be evaluated either on the total duration of incapacitating episodes over the past 12 months or by combining under 38 C.F.R. § 4.25 separate evaluations of its chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, whichever method results in the higher evaluation. A 60 percent rating is warranted for incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. Id. 

Note (1): For purposes of evaluations under 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. "Chronic orthopedic and neurologic manifestations" means orthopedic and neurologic signs and symptoms resulting from intervertebral disc syndrome that are present constantly, or nearly so. 

Note (2): When evaluating on the basis of chronic manifestations, evaluate orthopedic disabilities using evaluation criteria for the most appropriate orthopedic diagnostic code or codes. Evaluate neurologic disabilities separately using evaluation criteria for the most appropriate neurologic diagnostic code or codes. 

Note (3): If intervertebral disc syndrome is present in more than one spinal segment, provided that the effects in each spinal segment are clearly distinct, evaluate each segment on the basis of chronic orthopedic and neurologic manifestations or incapacitating episodes, whichever method results in a higher evaluation for that segment. 

With respect to neurologic manifestations, DC 8520, addresses the sciatic nerve. Incomplete paralysis of the sciatic nerve is rated 10 percent when mild, 20 percent when moderate, 40 percent when moderately severe, and 60 percent when severe with marked muscular atrophy. 38 C.F.R. § 4.124a; DC 8520. An 80 percent rating is warranted for complete paralysis of the nerve when the foot dangles and drops and there is no active movement possible of the muscles below the knee, and flexion of the knee is weakened or (very rarely) lost. Id. 

The term "incomplete paralysis" with peripheral nerve injuries indicates a degree of loss or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to the varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for mild, or at most, the moderate degree. See note at "Diseases of the Peripheral Nerves" in 38 C.F.R. § 4.124(a). 

Effective September 26, 2003, VA amended its Schedule for Rating Disabilities, 38 C.F.R. Part 4, to institute a general rating formula for evaluating diseases and injuries of the spine, including lumbosacral strain under DC 5237, spinal stenosis under DC 5238, degenerative arthritis of the spine under DC 5242, and intervertebral disc syndrome under Diagnostic Code 5243. Under the revised criteria, lumbosacral strain will be evaluated under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher evaluation when all disabilities are combined under § 4.25. 38 C.F.R. § 4.71a, The Spine, Note (6) (2014). 

Under the General Rating Formula, a 30 percent evaluation requires forward flexion of the thoracolumbar spine limited to 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine. A 50 percent rating is warranted if there is unfavorable ankylosis of the entire thoracolumbar spine. A 100 percent rating is warranted if there is unfavorable ankylosis of the entire spine. These ratings are warranted if the above-mentioned manifestations are present, with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. (38 C.F.R. § 4.71a, DCs 5235 to 5243, effective September 26, 2003.) 

The revised rating criteria under the General Formula for Diseases and Injuries of the Spine also, in pertinent part, provide the following Notes: 

Note (1): Evaluate any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, separately, under an appropriate diagnostic code. 

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees; extension is zero to 30 degrees; left and right lateral flexion are zero to 30 degrees; and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The combined normal range of motion of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of the spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. Id. 

The criteria with respect to evaluating IVD based on incapacitating episodes, effective from September 26, 2003, were essentially unchanged from the criteria in effect from September 23, 2002. Given the facts in this case, the Board finds that there is no advantage flowing to the Veteran between the revised regulations and those in effect at the time of receipt of his claim for increase. 

In the instant case, the Veteran has been assigned the maximum rating possible for his low back disability (60 percent) under the Formula for Rating Intervertebral Disc Syndrome based on incapacitating episodes. In order to be assigned a higher evaluation of 100 percent under the General Rating Formula, the evidence must show unfavorable ankylosis of the entire spine. While the evidence showed that the Veteran has significant limitation of motion of the lumbosacral spine with forward flexion restricted to no less than 10 degrees, he has never been shown to have unfavorable ankylosis of the entire spine. (See May 2004 VAX). The most recent VA (QTC) examination in January 2011 showed forward flexion to 30 degrees, with a combined range of motion of 80 degrees. Further, the fact that the Veteran is able to get in and out of his wheelchair and ambulate about his home with use of a cane, shows that he retains some range of motion of the spine, albeit limited by pain. Absent evidence of unfavorable ankylosis of the entire spine, an evaluation in excess of 60 percent is not warranted. 

Consideration must also be given to any functional impairment of the Veteran's ability to engage in ordinary activities and the effect of pain on the functional abilities. 38 C.F.R. §§ 4.10, 4.40, 4.45, 4.59 (2014). 

In this regard, while the Veteran has significant limitation of motion, there is no objective evidence of any additional functional limitation due to pain, fatigue, weakness, or lack of endurance following repetitive use. Further, the VA examiners in May 2004 and January 2011 found that there was no additional functional impairment due to pain or on repetitive use. While the Veteran has some functional loss due to pain, an evaluation in excess of 60 percent could be assigned only if the resulting functional loss is commensurate with unfavorable ankylosis of the entire spine. Here, the Veteran is not shown to have a corresponding functional loss. 

As noted above, the general rating formula provides that the rating criteria are to be applied with or without symptoms such as pain, stiffness, or aching. 38 C.F.R. § 4.71a, DCs 5235 to 5243. Other than chronic pain, there was no evidence of visible behavior or adequate pathology to suggest that any additional functional impairment was commensurate with the criteria necessary for a higher evaluation at any time during the pendency of this appeal. 

Applying the appropriate diagnostic codes to the facts of this case, the objective assessment of the Veteran's impairment from his low back disability does not suggest that he had sufficient symptoms so as to a warrant an evaluation in excess of 60 percent at any time during the pendency of this appeal. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Upper & Lower Extremity Disabilities

The Veteran's peripheral neuropathy of the right and left lower extremities are currently evaluated under DC 8520, for incomplete paralysis of the sciatic nerve. A 10 percent evaluation may be assigned for mild incomplete paralysis, 20 percent for moderate symptomatology, and 40 percent for moderately severe symptomatology. Incomplete paralysis with severe symptomatology and marked muscular atrophy warrants a 60 percent evaluation. An 80 percent rating is warranted for complete paralysis of the nerve when the foot dangles and drops and there is no active movement possible of the muscles below the knee, and flexion of the knee is weakened or (very rarely) lost. 38 C.F.R. § 4.124a, DC 8520 (2014). 

The Veteran's peripheral neuropathy of the right and left upper extremities are currently evaluated under DC 8510, for incomplete paralysis of the sciatic nerve. A 20 percent evaluation is assigned for mild incomplete paralysis of the major and minor extremity. Incomplete paralysis with moderate symptomatology warrants 40 and 30 percent ratings for the major minor extremity, respectively. Incomplete paralysis with severe symptomatology warrants 50 and a 40 percent evaluations, respectively. Complete paralysis with all shoulder and elbow movements lost or severely affected, hand and wrist movements not affected, warrants 80 and 60 percent evaluations, respectively. 38 C.F.R. § 4.124a, DC 8510 (2014). 

Neurological conditions are to be evaluated based upon the impairment of motor, sensory, or mental functioning. 38 C.F.R. § 4.120 (2014). The term "incomplete paralysis" with peripheral nerve injuries indicates a degree of loss or impaired function substantially less than the type pictured for complete paralysis given with each nerve, whether due to the varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for mild, or at most, the moderate degree. See note at "Diseases of the Peripheral Nerves" in 38 C.F.R. § 4.124(a). 

In this case, the objective findings on all of the medical reports and examinations during the pendency of this appeal did not show more than mild neurological impairment in the upper or lower extremities or more than moderate impairment in the upper extremities. On VA neurological examination in November 2005, sensation was intact to light touch, and there was no asymmetry, involuntary movements or atrophy. There was some weakness in all four extremities, though the examiner questioned the Veteran's volition. Muscle tone was within normal limits and coordination for finger to nose testing was intact. The examiner commented that the Veteran's sensory system was inconsistent with any known anatomical distribution pattern. 

A private EMG study of the left upper extremity in February 2009 showed mild slowing of the left median nerve at the wrist involving sensory fibers only. The examiner commented that cervical nerve root irritation could not be ruled out because the Veteran declined cervical paraspinal EMG testing. 

A VA outpatient note dated in February 2010, showed 4+/5 strength in the left upper extremity and normal strength in the right upper extremity. There were no pathologic reflexes, no Hoffmann sign or hyperreflexia in the upper extremities. Other than some numbness at the right knee and decreased sensation to light touch in the left leg, no other pertinent abnormalities were noted. Strength was 5/5 in both lower extremities. 

When examined by VA in January 2011, the Veteran had some sensory deficit to pinprick and some motor weakness in both upper and lower extremities. There was no signs of pathologic reflexes and cutaneous reflexes were normal in both upper and lower extremities. The diagnoses included sensory and motor deficit involving bilateral subscapular (upper extremities) and sciatic (lower extremities) nerves. 

In this case, the Veteran's primary neurological complaints involve radiating pain into his lower extremities, decreased sensation to pin prick and some weakness in the upper and lower extremities. (See January 2011 VAX). The objective findings on the medical reports of record, however, do not show more than mild neurological impairment of the upper and lower extremities. The Veteran is able to drive his truck, assist in caring for his grandchildren and maintains what he described as an "active" lifestyle, which includes fishing and other outdoor activities. 

Based on the clinical and diagnostic evidence of record, the Board finds that the evidence does not show clinically significant symptoms compatible with "moderate" impairment of the upper or lower extremities so as to warrant a rating in excess of 10 percent at anytime during the pendency of this appeal, including the one year period prior to receipt of the Veteran's claim for increase. 

Based on the clinical and diagnostic evidence of record, the Board finds that the evidence does not show clinically significant symptoms compatible with "moderate" impairment of the upper or lower extremities so as to warrant a rating in excess of the 10 and 20 percent evaluations currently assigned under DCs 8510 and 8520, respectively, at any time during the pendency of this appeal. Fenderson v. West, 12 Vet. App. 119 (1999). 

Neurogenic Colon

The Veteran's neurogenic colon is currently evaluated under DC 7332 for loss of sphincter control, which provides, in pertinent part, for a 60 percent evaluation for extensive leakage and fairly frequent involuntary bowel movements, and a maximum 100 percent rating for complete loss of sphincter control. 38 C.F.R. § 4.114, DC 7332. 

The Veteran is currently assigned a 60 percent rating for his neurogenic colon. In order to be entitled to a 100 percent rating, there must be objective evidence of complete loss of sphincter control. Although "complete loss of sphincter control" is not defined in the regulation, the Board must consider the plain language of the regulation and consider the terms in accordance with their common meaning. See Lockheed Corp. v. Widnall, 113 F.3d 1225, 1227 (Fed. Cir. 1997). In this regard, complete is defined as total or absolute. See Merriam-Webster's Collegiate Dictionary 254 (11th ed. 2003). 

In this case, the medical evidence during the pendency of this appeal does not show any objective evidence of leakage, involuntary bowel movements or loss of sphincter control. Private medical records in January 2006 and April 2008 showed the Veteran's rectal muscle tone was normal. VA hospital records for evaluation of urinary retention in February 2010, showed that the Veteran's bowel movements were monitored over a period of about 10 days, during which time the Veteran denied any bowel incontinence and was not shown to have any involuntary bowel movements or loss of sphincter control. On VA QTC examination in January 2011, the Veteran reported a history of chronic intestinal problems for many years, but did not describe any problems with fecal leakage, involuntary bowel movements or any need to wear pads, and specifically denied any chronic constipation or diarrhea. The Veteran declined a rectal examination due to severe pain of the cervical and lumbosacral spine. 

In this case, while the evidence indicated that the Veteran sometimes uses a form of digital stimulation to move his bowels, there is no objective or competent medical evidence of complete loss of sphincter control. On the contrary, the medical reports of record are replete with notations that the Veteran is continent of stool and is able to void independently. While the Veteran reported that he digitally stimulates bowel movements intermittently, this does not equate to loss of sphincter control. The rating criteria addresses loss of sphincter control in terms of involuntary bowel movements and excessive leakage, symptoms that the Veteran has never claimed or demonstrated. Furthermore, there is no competent medical evidence of record that even remotely suggested that the Veteran's occasional digital stimulation was due to loss of sphincter control. Although the RO assigned a 60 percent rating for neurogenic colon, the evidence of record does not show any of the findings necessary to support that rating. Accordingly, there is no basis for the assignment of a higher evaluation. See Fenderson v. West, 12 Vet. App. 119 (1999). 

Extraschedular Considerations

In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321. The Court has set out a three-part test, based on the language of 38 C.F.R. § 3.321(b)(1), for determining whether a Veteran is entitled to an extraschedular rating: (1) the established schedular criteria must be inadequate to describe the severity and symptoms of the claimant's disability; (2) the case must present other indicia of an exceptional or unusual disability picture, such as marked interference with employment or frequent periods of hospitalization; and (3) the award of an extraschedular disability rating must be in the interest of justice. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). 

For the reasons discussed above, the Board finds that the manifestations of the Veteran's low back and bilateral upper and lower extremity disabilities and neurogenic colon are consistent with the schedular criteria, and there is no objective or competent medical evidence that any manifestations related to the service-connected disabilities are unusual or exceptional. The schedular rating criteria adequately contemplates the degree of impairment caused by the Veteran's disabilities and provides for higher evaluations with more severe symptoms or clinical findings. In view of this, referral of this case for extraschedular consideration is not in order. 


ORDER

An effective date earlier than July 17, 2007, for the award of SMC based on the need for A&A is denied. 

An increased rating for lumbar strain with intervertebral disc syndrome is denied. 

An increased rating for neurogenic colon with bowel dysfunction is denied. 

An increased rating for right upper extremity subscapular nerve disability is denied. 

An increased rating for left upper extremity subscapular nerve disability is denied. 

An increased rating for right lower extremity sciatic peripheral neuropathy is denied. 

An increased rating for left foot strain with sciatic peripheral neuropathy is denied. 




____________________________________________
WAYNE M. BRAEUER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs